Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES

| ROY ELDON MILLER<br><br>Apelante<br><br>v.<br><br>AMY TYLER LOUTHAN<br><br>Apelada | TA2026AP00116 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm.:<br>FA2022RF00189<br><br>Sobre:<br>Custodia, Relaciones Paterno Filiales |
| --- | --- | --- |

Panel especial integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Candelaria Rosa, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 15 de junio de 2026.

Comparece Roy Miller (señor Miller o el apelante) y nos solicita que revoquemos la *Sentencia* emitida el 8 de septiembre de 2025 y notificada el 15 de diciembre de 2025, por el Tribunal de Primera Instancia Sala Superior de Fajardo. Mediante la referida determinación, el foro primario dispuso que el Informe Social Forense, objeto de impugnación por el apelante, cumplió con el *Manual de Normas y procedimientos de las Unidades Sociales de familia y Asuntos de Menores* (OAT 2013) y la legislación aplicable en la evaluación del caso de epígrafe incoado en contra de la Amy Tyler Louthan (señora Louthan o apelada) sobre la custodia y relaciones paternofiliales de un menor procreado por las partes. El foro primario también declaró No Ha Lugar la solicitud de reconsideración del apelante.

En síntesis, el caso que nos ocupa se inició el 9 de septiembre de 2022 cuando el señor Miller incoó la demanda de epígrafe en contra de

la señora Louthan. Entre otras cosas, alegó que la apelada exigió al apelante participar de los beneficios que éste último ostentaba por heridas recibidas al haber servido en las fuerzas armadas de los Estados Unidos de América y que fue expulsado por la señora Louthan del hogar hasta tanto no gestionara dichos beneficios. El apelante manifestó que cuidaba y velaba mayormente por dos hijos procreados por la señora Louthan en una relación anterior, y por el hijo producto de la relación entre ambos, el menor ITML (en adelante, ITML), nacido el 16 de julio de 2013. Indicó que al presente cuenta con la estabilidad económica y emocional para cuidar de su hijo. Por lo anterior, solicitó la custodia del menor y la suspensión de las relaciones maternofiliales.

El 27 de noviembre de 2022, la señora Louthan presentó su *Contestación a demanda*. Alegó que fue amenazada de muerte por el señor Miller y que fue sometida a un patrón de maltrato durante el embarazo. Mencionó la reclamación NSRF2016000934, en la que exigió al apelante la aceptación de paternidad del menor ITML. Asimismo, la señora Louthan reconvino y solicitó la privación de patria potestad del señor Miller sobre el menor ITML. El 20 de diciembre de 2022, el apelante presentó su *Contestación a Reconvención* y solicitó que se declarara No Ha lugar el petitorio de la apelada.

Posteriormente, el 1 de febrero de 2023, el apelante presentó una *Moción de Sentencia Sumaria*.[1] El 5 de febrero de 2023, la apelada presentó su oposición. El 13 de febrero de 2023, notificada al día siguiente, en ausencia de un estudio social forense, el foro primario

---

[1] Véase, SUMAC-TPI, Caso Núm. FA2022RF00189, Entrada Núm. 26, Anejo 6. Entre otros documentos, el apelante adjuntó la *Sentencia* dictada el 27 de junio de 2017, y reducida a escrito el 12 de julio de 2017, en el caso NSRF2016000934, en donde se concedió la custodia y facultades tutelares para todo lo relacionado a la salud y educación del menor ITML a la señora Louthan.

declaró prematuras, tanto la sentencia sumaria, como la oposición, por estar en curso un estudio social forense. Posteriormente, el 6 de marzo de 2023, notificada al día siguiente, el foro primario sostuvo la necesidad del informe social, por lo que declaró No Ha Lugar una reconsideración presentada por el apelante.

Inconforme, el 28 de marzo de 2023, el apelante presentó el recurso KLCE202300318. El recurso de *certiorari* fue denegado mediante *Resolución* emitida el 7 de agosto de 2023, notificado al día siguiente, por un panel colega y devuelto al foro primario para la continuación de los procedimientos.

Luego de varios trámites procesales innecesarios pormenorizar y en lo que nos es atinente, el 4 de enero de 2024, la Unidad Social de las Salas de Familia y Menores presentó el *Informe Social Forense*.[2] El 16 abril de 2024, mediante *Orden* notificada el mismo día, el foro apelado autorizó acceso al perito del apelante para examinar al expediente que utilizó la unidad social para preparar el informe. El 23 de abril de 2024, el señor Miller presentó sus objeciones al *Informe Social Forense*.[3] Entre otras cosas, el apelante objetó que el informe incluyera información sobre una Orden de Protección que, según explicó, nunca advino final. Adicionalmente, refutó varias de las observaciones, diagnósticos de salud mental, determinaciones de hecho y/o conclusiones que forman parte del informe y que se le imputan a su persona. Culminó su escrito con las siguientes objeciones generales al informe:

[…]

a. Quien redact[ó] y prepar[ó] el informe no fue imparcial.

---

[2] Véase, SUMAC-TPI, Caso Núm. FA2022RF00189, Entrada Núm. 140 y Anejos.
[3] *Íd*., Entrada Núm. 189.

b. Los métodos científicos utilizados no son los adecuados.

c. Las conclusiones o determinaciones de hecho se basan en información falsa.

d. No se realizaron las entrevistas y esfuerzos necesarios para realizar un Informe adecuado y correcto.

e. La jurisprudencia y estatutos citados no son de aplicación en el presente caso.

f. El Informe es contradictorio en sus determinaciones o conclusiones.

g. No se utilizó toda la evidencia disponible y relevante al preparar el Informe.

h. Quien preparó el Informe no cuenta con la pericia para leer los expedientes médicos debido a errores claramente apreciables en el Informe.

i. El Informe no tiene como norte el mejor bienestar del menor.

[…]

Subsiguientemente, el 3 de mayo de 2024, el apelante anunció que impugnaría el informe social forense y al perito seleccionado para ello. El 3 de julio de 2024, la apelada presentó una *Moción solicitando se tenga por desistida impugnación de demandante a informe forense*. Puntualizó que el apelante habría tardado siete (7) meses en producir la prueba que utilizaría en su impugnación del Informe Social. Por lo anterior, solicitó la desestimación de la impugnación al Informe. El 16 de julio de 2024, el apelante presentó su informe de análisis pericial.[4]

Luego de varios trámites procesales, incluyendo un extenso periodo de vistas, el 8 de septiembre de 2025, notificada el 15 de diciembre de 2025, el foro primario emitió la *Sentencia* apelada.[5] Luego de celebradas catorce (14) vistas de Juicio en su Fondo, el foro

---

[4] *Íd.*, Entrada Núm. 230.
[5] *Íd.*, Entrada Núm. 566.

apelado declaró No Ha Lugar la Solicitud de Impugnación de Informe presentada por el apelante. Adicionalmente, sobre la patria potestad, dispuso que fuera ejercida por ambos padres, concediendo el ejercicio exclusivo de la custodia a la señora Louthan.[6] También, impuso el costo de las relaciones filiales terapéuticas al apelante.

Insatisfecho, el 30 de diciembre de 2025, el señor Miller presentó *Moción en solicitud de reconsideración de sentencia*. En síntesis, el apelante imputó enajenación parental a la apelada, solicitó que se reconsiderara la imposición del pago de las terapias a una sola parte y que, en la alternativa, sean sufragados por ambos padres. Adicionalmente, solicitó que se descarte del *Informe Social Forense*. El 31 de enero de 2025, notificada el 7 de enero de 2026, el foro primario, mediante *Resolución Interlocutoria*, declaró No Ha Lugar, la reconsideración del apelante.

Inconforme aún, el 5 de febrero de 2026, el señor Miller recurre ante este Tribunal e imputó al foro primario los siguientes señalamientos de error:[7]

a. ERRÓ EL TPI AL DESCANSAR FUNDAMENTALMENTE EN UN INFORME SOCIAL DEFECTUOSO, IGNORANDO LA VASTA EVIDENCIA PRESENTADA EN LA VISTA DE IMPUGNACIÓN[.]

b. ERR[Ó] EL TPI AL DAR UN TRATO DESIGUAL EN LA VALORACIÓN DE LA PRUEBA FINANCIERA Y MORAL[.]

c. ERR[Ó] EL TPI AL IMPONER LAS ÓRDENES DE "REEDUCACIÓN" BASADAS EN ÓRDENES EX PARTE[.]

---

[6] *Íd.*, Entradas Núm. 390, 396, 411, 419, 591, 595. Cabe destacar que, entre el 5 y el 8 de febrero de 2025, el apelante presentó los recursos KLCE202500109 (sobre Custodia-intérpretes) y TA2026CE00143 (sobre Pensión de Alimentos).

[7] *Íd.*, Entrada Núm. 587. Cabe destacar que, el 8 de febrero de 2026, el apelante presentó el recurso TA2026CE00143 sobre Pensión de Alimentos.

d. ERR[Ó] EL TPI AL IMPONER NUEVAS COORDINACIONES TERAPÉUTICAS Y EN LA IMPOSICIÓN DE COSTAS[.]

e. ERRÓ EL TPI AL NO APLICAR LA LEY NÚM. 70-2020 SOBRE ENAJENACIÓN PARENTAL Y SU MANDATO SOBRE EL PAGO DE TERAPIAS[.]

El 19 de febrero de 2026, notificada el mismo día, esta Curia ordenó al foro primario que remitiera las regrabaciones de las vistas de impugnación, según solicitado por el apelante.[8] El 3 de junio de 2026, ordenamos la entrega de una regrabación no localizada en el envío original. Al día siguiente, el foro primario remitió la grabación pendiente. Con el beneficio del recibo de todas las regrabaciones de las vistas de impugnación, resolvemos.

En nuestro ordenamiento jurídico se ha reconocido consistentemente el derecho fundamental de los padres a relacionarse con sus hijos. *Rexach v. Ramírez*, 162 DPR 130 (2004). No obstante, este derecho no es absoluto y puede ser limitado en función del interés apremiante del Estado de proteger el bienestar de los menores. *Estrella, Monge v. Figueroa Guerra*, 170 DPR 644 (2007). Al así hacerlo, la adjudicación de la patria potestad y la custodia se determinará a base del mejor bienestar del menor, *Rivera Ríos Ex Parte*, 173 DPR 678 (2008). Dicho criterio está revestido del más alto interés público y los tribunales, en protección de ese interés y en el ejercicio del poder de *parens patriae*, tienen amplias facultades y discreción. *Martínez v. Ramírez Tió*, 133 DPR 219 (1993).

De modo equivalente, el Tribunal Supremo de Puerto Rico ha señalado que, en toda controversia relacionada con la custodia legal de un menor de edad, el foro primario tendrá como su único norte y

---

[8] Véase, Entrada Núm. 4, SUMAC-TA. *Moción Informativa*.

propósito principal el bienestar y los mejores intereses del menor. *Nudelman v. Ferrer Bolívar*, 107 DPR 495 (1978). Para alcanzar ese fin, el Tribunal debe tomar en consideración los siguientes factores: (1) la preferencia del menor, su sexo, edad, y salud mental y física; (2) el cariño que puede brindársele por las partes en controversia; (3) la habilidad de aquellas para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; (4) el grado de ajuste del menor al hogar, la escuela y la comunidad en que vive; (5) la interrelación del menor con las partes, sus hermanos y otros miembros de la familia; y (6) la salud psíquica de todas las partes. *Id.*, pág. 511. Ahora bien, con respecto a cómo debe hacerse la determinación judicial en casos de custodia de menores, se ha señalado que "[n]ingún factor es de por sí decisivo. Hay que sopesarlos todos para juzgar de qué lado se inclina la balanza y al menos aproximarse al logro de la solución más justa en un asunto de tan extrema dificultad". *Maldonado v. Burris*. 154 DPR 161, 167 (2001).

Por otra parte, la Ley Núm. 223-2011, conocida como *Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia*, 32 LPRA sec. 3181 *et seq*., establece como política pública de nuestro país, "la promoción de la custodia compartida y corresponsabilidad sobre los hijos; la consideración de la misma como primera alternativa en los casos que se ajuste el mejor bienestar del menor; y el promover la participación activa de ambos progenitores en las actividades de los hijos, en el mayor grado posible". Art. 2, 32 LPRA sec. 3181n. Luego, dispone que, de surgir controversias entre los progenitores en cuanto a la custodia compartida, el Tribunal referirá el caso al trabajador social de relaciones de familia,

quien realizará una evaluación y rendirá un informe con recomendaciones. Tanto el trabajador social, al hacer su evaluación, como el Tribunal, al emitir su determinación, tomarán en consideración criterios tales como el nivel de responsabilidad o integridad moral de los progenitores, su capacidad para satisfacer las necesidades, el historial de cada uno en la relación con sus hijos y la capacidad para comunicarse, así como también la salud mental de ambos progenitores y de los hijos, y las necesidades específicas de cada uno de los menores cuya custodia está en controversia, entre otros. Art. 7, 32 LPRA sec. 3185.

Por virtud de la Ley Núm. 70-2020, la Asamblea Legislativa enmendó los Arts. 7 y 9 de la Ley Núm. 223-2011 para incorporar el concepto de enajenación parental. Después de un divorcio o separación, según sea el caso, y una vez establecida la custodia de los hijos y/o hijas, el Estado garantiza el derecho tanto de los menores, como de los progenitores, a relacionarse y mantener el apropiado lazo familiar. *Exposición de Motivos,* Ley Núm. 70-2020. El estatuto asocia la enajenación parental con "el uso de diferentes estrategias, con el objeto de impedir, obstruir o destruir sus vínculos con el otro progenitor […] en el contexto de las disputas por la custodia y cuidado de los niños". *Íd*.

En lo pertinente a esta controversia, el Art. 7 de la porción de ley establece lo siguiente sobre la enajenación parental y la consideración de criterios en los procesos de adjudicación de custodia:

[…]

(13) Analizará la presencia de la enajenación parental, o cualesquiera otras razones que pudieran ocasionar la resistencia del menor para relacionarse con sus padres. La

enajenación parental se refiere a la obstaculización por parte de uno de los progenitores de las relaciones filiales de sus hijos o hijas, menores de edad, con el otro progenitor, mediante el uso de diferentes estrategias, con el propósito de transformar o adoctrinar la conciencia de sus hijos o hijas, a los fines de denigrar, impedir, obstruir o destruir sus vínculos con el otro progenitor y el menor de edad presenta pensamientos o sentimientos de rechazo hacia el otro progenitor; demuestra actitudes negativas hacia este o si, en efecto, se ha afectado el vínculo afectivo entre el menor y el otro progenitor. Todas las actuaciones que surgen del presente inciso deben ocurrir de forma repetitiva de modo que constituyan un patrón y no basado en hechos aislados.

[…]

Adicionalmente, la precitada ley, en su Art. 9, dispone que:

"[…] Todo progenitor que causare daño emocional o psicológico a los menores por la conducta de enajenación parental, se le ordenará el pago por las terapias psicológicas que conlleven la reparación de dicho daño en los menores. El tribunal tendrá la discreción para tomar las medidas y emitir las ordenes que entienda pertinentes en cualquier etapa del proceso.".

Por último, vale recordar que en nuestro ordenamiento jurídico se presume que los tribunales actúan con corrección, por lo que compete a la parte apelante la obligación de demostrar lo contrario. *Morán v. Martí*, 165 DPR 356 (2005) (*Per Curiam*). Dicho de otro modo, los foros apelativos debemos otorgar gran deferencia a las determinaciones de hechos, la apreciación de la prueba testifical y las adjudicaciones de credibilidad que hacen los foros primarios. *SLG Fernández-Bernal v. RAD-MAN*, 208 DPR 310 (2021). Ello responde a que es el foro primario quien ve, escucha y aprecia la conducta de los testigos y, por tanto, está en mejor posición para evaluar y aquilatar la prueba presentada en el juicio. *Pena Rivera v. Pacheco Caraballo*, 213 DPR 1009 (2024) (citando a *Ortiz Ortiz v. Medtronic*, 209 DPR 759 (2022); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194 (2021)). Esto

incluye cuando la evidencia directa de un testigo le merece entero crédito al Tribunal de Primera Instancia, lo cual, por efecto, se consideraría como prueba suficiente de cualquier hecho. *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884 (2016) (citando a *SLG Torres-Matundan v. Centro Patología*, 193 DPR 920 (2015); *Meléndez Vega v El Vocero de PR*, 189 DPR 123 (2013)). Como consecuencia, los foros revisores no deben intervenir con las determinaciones de hechos de los jueces de instancia, salvo que medie error manifiesto, pasión, prejuicio o parcialidad. Íd. (citando a *Ortiz Ortiz v. Medtronic*, *supra*; *Santiago Ortiz v. Real Legacy et al.*, *supra*). Véase Regla 42.2 de Procedimiento Civil de 2009 (32 LPRA Ap. V).

En el presente caso, resolvemos que el Tribunal de Primera Instancia no erró en declarar No Ha Lugar la Solicitud de Impugnación de Informe Social presentada por el apelante. Dado que los señalamientos planteados por el apelante están íntimamente relacionados, procederemos a discutirlos en conjunto.

Nuestra jurisprudencia ha dictaminado que, para propósitos de impugnación, el requisito mínimo del debido proceso de ley exige que las partes tengan la oportunidad de examinar la prueba pericial adversa y contrainterrogar a los peritos que la produjeron. *Rentas Nieves v. Betancourt Figueroa*, 201 DPR 416 (2018). La prueba presentada durante el extenso calendario de vistas de impugnación y el voluminoso expediente electrónico evidenciaron que el apelante tuvo oportunidad de contrainterrogar a los peritos que han producido la prueba que ha estimado adversa, según instruye *Rentas Nieves v. Betancourt Figueroa*, *supra*. En particular en el caso de autos, el 4 de enero de 2024, la Unidad Social de las Salas de Familia y Menores produjo el

*Informe Social Forense* objetado por el apelante.[9] Las partes fueron evaluadas directamente y mediante testimonio de familiares y/o colaterales.[10] El *Manual Normas y Procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores de la Oficina de Administración de los Tribunales* (OAT) y sus Formas OAT 108 sobre *Registro de Intervenciones* fueron referenciados por las partes.[11] Adicionalmente, se incluyeron evaluaciones psicológicas del menor y sus progenitores.[12]

Asimismo, en el *Informe de Análisis Pericial* de 16 de julio de 2024, presentado por el apelante y preparado por el perito de impugnación y trabajador social, Dr. Paul Fericelli, se utilizó la palabra "inconcluso" en observaciones del *Informe Social Forense* respecto a una orden de protección emitida en contra del apelante y un incidente de negligencia que involucra al apelante y al menor.[13] En la vista del 14 de abril de 2025 reiteró este adjetivo.[14] Sin embargo, no articuló satisfactoriamente una teoría de cómo se incumplieron los procedimientos de evaluación o de la forma en que las

---

[9] Véase, SUMAC-TPI, Caso Núm. FA2022RF00189, Entrada Núm. 328, Exhibit 3. *Informe Social Forense.*

[10] *Íd.*, págs. 13-16. Cabe destacar que el perito de la parte apelante indicó que no surge *del Informe Social Forense* que la trabajadora social asignada al caso solicitara los colaterales del apelante o que él los haya provisto. Refiérase al audio de la vista de 28 de abril de 2025; 1:13:00-1:14:16. No obstante, en las vistas de impugnación constan testimonios de una hija y un conocido del apelante. Véase, SUMAC-TPI, Caso Núm. FA2022RF00189, Entradas Núm. 447,462,477. Los testimonios vertidos en las vistas de impugnación fueron examinados por este foro apelativo intermedio según solicitado por el apelante en su *Moción Informativa*, presentada el 17 de febrero de 2026 (Entrada 4, SUMAC-TA, inciso 3, págs. 2-3).

[11] *Normas y procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores*, Enero 2024, accedido el 10 de junio de 2026, https://poderjudicial.pr/Documentos/Leyes-Reglamentos/Normas-Procedimientos-Unidades-Sociales-Relaciones-Familia-Menores.pdf. El enlace corresponde al Manual de Enero 2024. En la vista del 28 de abril de 2025 se hace referencia a material forense del Poder Judicial del 2011 y al Manual de 2013 de la Unidad Social. Véase, SUMAC-TPI, Caso Núm. FA2022RF00189, Entrada Núm. 437. Refiérase al audio de la vista de 28 de abril de 2025; 0:24:00-0:27:43, 0:58:00-1:02:12.

[12] Véase, SUMAC-TPI, Caso Núm. FA2022RF00189, Entrada Núm. 328, Exhibit 4, Exhibit 5, Exhibit 6.

[13] *Íd.*, Exhibit 8, págs. 18-19.

[14] Refiérase al audio de la vista de 14 de abril de 2025; 0:45:00-0:47:04.

recomendaciones no estuvieran basadas en tal evaluación. En este caso, coincidimos con la *Sentencia* apelada cuando indica lo siguiente:

> "[…] debemos partir de la premisa de que la función del perito de impugnación no es la reevaluación del caso ni la recopilación de nueva información, sino que su función consiste en ayudar al Tribunal a determinar si el perito evaluador siguió los procedimientos establecidos para conducir la evaluación social y si las recomendaciones emitidas se sustentan en los hallazgos de dicha evaluación. No se trata, por tanto, de sustituir estilos ni criterios, sino de ilustrar al juzgador respecto a si el evaluador siguió el procedimiento establecido y si las recomendaciones se sustentan.[…]"

Sobre la condición económica de las partes, el expediente alberga información financiera de ambos, a pesar del cuestionamiento del apelante sobre los ingresos/recursos de la apelada[15]. El apelante y el Tribunal tuvieron ante sí la prueba financiera de ambas partes, satisfaciéndose así el derecho del apelante a examinar la evidencia en contrario. El Tribunal le recordó al apelante que estaban ante un proceso de **investigación social** e impugnación de Informe Social, lo cual no es sinónimo de un proceso de perjurio o fraude, labor que no corresponde al trabajador social.[16]

Bien es sabido que en nuestro ordenamiento jurídico el deber "de los progenitores de brindar alimentos a los menores de edad es parte esencial del derecho a la vida consagrado en" nuestra Constitución. *McConnell Jiménez v. Palau Grajales*, 161 DPR 734, 745 (2004); Const. PR art. II, sec. 7. Este deber "surge de la relación paterno-filial que se origina en el momento en que la paternidad o maternidad quedan

---

[15] Véase, SUMAC-TPI, Caso Núm. FA2022RF00189, Entrada 162, Moción de parte demandada sometiendo PIPE, presentada por la apelada el 30 de enero de 2024. También, refiérase al audio de la vista de 18 de marzo de 2025; 0:45:30-0:50:37.

[16] Véase, SUMAC-TPI, Caso Núm. FA2022RF00189, Entrada 163, *Moción Informativa*, presentada por el apelante el 30 de enero de 2024; Entrada Núm. 198, *Moción Informativa de Alimentos,* presentada por el apelante el 13 de mayo de 2024; Entrada Núm. 328, *Moción sometiendo exhibits*, presentada por el apelante el 22 de noviembre de 2024, sobre documentos estipulados por ambas partes (Exhibit 12, Exhibit 16). También, refiérase al audio de la vista de 18 de marzo de 2025; 0:37:00-0:38:15; 0:47:00-0:50:42.

establecidos". *McConnell Jiménez v. Palau Grajales*, *supra*, en la pág. 745; *Chévere v. Levis Goldstein*, 150 DPR 525 (2000). De esta forma, la obligación de proveer alimentos a los menores de edad es "un deber legal que existe entre el alimentista y el alimentante en virtud del vínculo parental personalísimo que los une…". *Maldonado v. Cruz Dávila*, 161 DPR 1, 13 (2004).

Según el expediente, el menor procreado por el señor Miller y la señora Louthan nació en el año 2013.[17] En el año 2017, el señor Miller se encontraba confinado en una institución carcelaria en los Estados Unidos.[18] Para ese año, el menor aún no había sido inscrito en el Registro Demográfico. Ante estas circunstancias, el Tribunal ordenó su inscripción tardía y concedió la custodia y facultades tutelares para todo lo relacionado con la salud y educación del menor a la señora Louthan.[19]

Estas dilaciones en gestiones de reconocimiento del menor no se vieron excusadas por el señor Miller en el expediente, más allá de señalar que enfrentó procesos legales de índole penal. En el año 2022 el apelante incoó la reclamación de epígrafe. El Informe Social impugnado recogió que, durante la Entrevista Inicial con la Unidad Social, el Sr. Miller notificó que no aportaba pensión alimentaria para su hijo, a pesar de que "[a]dujo que no tenía ningún problema con enviarle dinero al menor".[20] Posteriormente, declaró que fue en el año 2016 la última vez que habló con el menor sin intermediarios y que en el año 2023 habló con él mediante un tercero (trabajadora social). Lo

---

[17] Véase, SUMAC-TPI, Caso Núm. FA2022RF00189, Entrada Núm. 1, Anejo 3. *Sentencia* de 17 de 27 de junio de 2017 en el caso NSRF201600934, reducida a escrito el 12 de julio de 2017.
[18] *Íd.*, a la pág. 2.
[19] *Íd.*, a la pág. 3.
[20] Véase, SUMAC-TPI, Caso Núm. FA2022RF00189, Entrada Núm. 328, Exhibit 3. *Informe Social Forense,* a la pág. 28.

atribuyó a alegaciones realizadas por la señora Louthan que catalogó como falsas.[21]

Los elementos descritos por el mismo apelante, evidentemente, abonan a la necesidad de construir una relación antes de exigirla. Ante la falta insubsanable de comunicación entre las partes,[22] este Tribunal halla meritorias las órdenes de reeducación y la coordinación de procesos terapéuticos en aras de alcanzar el objetivo del mejor bienestar del menor,[23] a través del proceso conjunto de terapias supervisadas que ha ordenado el foro primario en relación con una reunificación terapéutica.[24] A eso le abonamos el deseo expreso del menor a relacionarse con el señor Miller, a quién reconoce como su padre.[25]

La alegación de enajenación parental imputada en contra de la señora Louthan, por su parte, no se sostiene como una acción repetitiva. Lo que sí se evidencia en este caso es el reconocimiento del menor sobre la figura de su padre, su interés afirmativo en tratarlo y la ausencia de aportación económica del señor Miller a la vida del menor. Por consiguiente, la imposición de costear las relaciones filiales terapéuticas resulta razonable al proceso de construcción de la relación que padre e hijo tienen por delante. Por lo anterior, resolvemos que el foro primario no erró al excluir la aplicación de la figura de enajenación parental. Así también, la aplicación del costo de las terapias encuentra su fundamento en un balance de intereses.

---

[21] Refiérase al audio de la vista de 3 de junio de 2025; 1:54:37-1:55:43.

[22] Refiérase al audio de la vista de 8 de septiembre de 2025; 0:57:09-0:57:22. Véase, SUMAC-TPI, Caso Núm. FA2022RF00189, Entrada Núm. 328, Exhibit 1. *Estudio en Sosua República Dominicana,* a la pág. 6.

[23] *Ortiz v. Meléndez*, 164 DPR 16 (2005), citando a *Santana Medrano v. Acevedo Osorio*, 116 DPR 298, 301 (1985).

[24] Refiérase al audio de la vista de 8 de septiembre de 2025; 0:56:35:00-0:56:50.

[25] Véase, SUMAC-TPI, Caso Núm. FA2022RF00189, Entrada Núm. 328, Exhibit 3, a la pág. 47, *Informe Social Forense*. Refiérase al audio de la vista de 10 de febrero de 2025; 1:03:00-1:04:09.

En fin, el foro primario determinó correctamente resolver No Ha Lugar la Solicitud de Impugnación de Informe presentada por el señor Miller y al resolver que ambos padres mantienen el ejercicio de la patria potestad, mientras que la custodia exclusiva la retiene la madre junto a la concesión de facultades tutelares para lo relacionado con la salud, educación y tramitación del pasaporte del menor.[26] Por tanto, las relaciones filiales quedan sujetas a lo reportado en los procesos terapéuticos.[27]

Luego de examinar el expediente en su totalidad, resolvemos que el foro primario no incidió en los errores señalados por el apelante. En conclusión, se confirma el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[26] Véase, SUMAC-TPI, Caso Núm. FA2022RF00189, Entrada Núm. 566. *Sentencia* apelada, págs. 27-28.

[27] Refiérase al audio de la vista de 8 de septiembre de 2025; 0:50:00-0:51:00.